STINA JOHNSON *vs.* LAWRENCE L. HARRISON.

December 28, 1891.

Constitution—Title and Subjects of Act—Probate Code.—Chapter 46, Laws 1889, entitled "An act to establish a Probate Code," is not obnoxious to the constitutional provision that "no law shall embrace more than one subject, which shall be expressed in the title."

| | |
|---|---|
| 47 | 575 |
| 49 | 507 |
| 47 | 575 |
| 59 | 529 |
| 47 | 575 |
| 79 | 287 |
| 47 | 575 |
| 82 | 132 |
| 47 | 575 |
| 84 | 249 |
| 47 | 575 |
| 85 | 173 |

Mary B. Harrison, late of St. Paul, Ramsey county, in this state, died in that city on April 17, 1890, leaving surviving her Lawrence L. Harrison, her husband, Stina Johnson, her mother, and two sisters, but no father, brother, child, or issue of any deceased child. Her estate, which consisted of a single lot of land in St. Paul, was administered in the probate court of that county, which made a final decree assigning the whole of such real estate to her husband in fee simple. At the hearing in the probate court, Stina Johnson, the mother of the decedent, objected to the assigning of more than one-third to the husband, and claimed that two-ninths should be assigned to herself, and from the decree of the probate court she appealed, on questions of law and fact, to the district court for Ramsey

county. In that court she made and filed her complaint, to which Law-rence L. Harrison demurred; his demurrer was overruled by *Otis*, J., and he appealed. By Gen. St. 1878, c. 46, entitled "Title to Real Property by Descent," it is provided (§ 3) in respect to the descent of land in case of intestacy, that the surviving husband or wife shall be entitled to one-third, and, in respect to the other two-thirds, "if the intestate leaves no issue nor father, his estate shall descend, one equal one-third to his mother, and the residue in equal shares to his brothers and sisters." In 1889, an act was passed (Laws 1889, c. 46) entitled "An act to establish a Probate Code," containing 21 chapters and 326 sections. Chapter 3 of this act is entitled "Title to Real Property by Descent," and it is therein provided (§ 63) that the real estate of an intestate, other than the homestead, shall de-scend as follows: "If there be no child, nor lawful issue of a deceased child living, to the surviving husband or wife." The ground of the decision of the district court was that the matter of the descent of land was a subject not embraced in the title of the act of 1889, so that this part of the Probate Code and also the section repealing Gen. St. 1878, c. 46, are unconstitutional, and the latter chapter is still in force.

*John D. O'Brien, H. F. Stevens,* and *Edward B. Graves,* for ap-pellant.

*Henry J. Horn* and *John W. Lane,* for respondent.

MITCHELL, J. Chapter 46, Laws 1889, entitled "An act to es-tablish a Probate Code," is divided into 21 subchapters, containing 326 sections. The intention of the legislature obviously was to en-act, in the form of one act, a complete system of statutory law re-lating to or connected with those matters of which, under the con-stitution, probate courts have jurisdiction, to wit, "estates of deceased persons and of persons under guardianship." It is contended that the act is repugnant to section 27, article 4, of the constitution of the state, which provides that "no law shall embrace more than one subject, which shall be expressed in the title;" that the act embraces several distinct and separate subjects, some of which, particularly subchapter 3, relating to title to real property by descent, are not ex-pressed in the title.

The purposes of such a constitutional provision, the mischiefs which it is designed to prevent, the rules to be applied to its construction, and the tests to be applied to determine whether a law is repugnant to it, are so familiar, and have been so often passed upon by this and other courts, that they need only be referred to very briefly. Its purposes are two : *First,* to prevent what is called "logrolling legislation" or "omnibus bills," by which a number of different and disconnected subjects are united in one bill, and then carried through by a combination of interests; *second,* to prevent surprise and fraud upon the people and the legislature by including provisions in a bill whose title gives no intimation of the nature of the proposed legislation, or of the interests likely to be affected by its becoming a law; and, in deciding whether an act is obnoxious to this provision of the constitution, a very good test to apply is whether it is within the mischiefs intended to be remedied.

Again, while this provision is mandatory, yet it is to be given a liberal, and not a strict, construction. It is not intended nor should it be so construed as to embarrass legislation by making laws unnecessarily restrictive in their scope and operation, or by multiplying their number, or by preventing the legislature from embracing in one act all matters properly connected with one general subject. The term "subject," as used in the constitution, is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. The large number of related or cognate matters often treated of under some comprehensive title, such as "Criminal Code," "Penal Code," "Code of Civil Procedure," "Private Corporations," "Railroad Corporations," and the like, are familiar illustrations of what may be

legitimately included in one act. Any construction of this provision of the constitution that would interefere with the very commendable policy of incorporating the entire body of statutory law upon one general subject in a single act, instead of dividing it into a number of separate acts, would not only be contrary to its spirit, but also seriously embarrassing to honest legislation. All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. The subject may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters, such as will render them germane to one subject and to each other, can be of various kinds, as, for example, of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term. Neither is it necessary that the connection or relationship should be logical; it is enough that the matters are connected with and related to a single subject in popular signification. The generality of the title of an act is no objection, provided only it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected. The title was never intended to be an index of the law.

Tested by these general rules, we are of opinion that the Probate Code embraces a single general subject, and that this subject is sufficiently expressed in its title.

In our judgment, much of the argument of counsel for respondent rests upon an entirely too limited and narrow definition of the meaning of the words "probate" and "code." They seem to construe the title of the act as if it read "An act to establish a Probate Court Code of Procedure." The word "code," as now generally used, and as obviously used in this title, means "a system of law,"—"a systematic and complete body of law." And while the word "probate" originally meant merely "relating to proof," and afterwards "relating to the proof of wills," yet in the American law it is now a general name or term used to include all matters of which probate courts have jurisdiction, which in this state are "the estates of deceased persons and

of persons under guardianship." Hence the term "Probate Code" may and should be construed as meaning "the body or system of law relating to the estates of deceased persons and of persons under guardianship." In common understanding, this is as distinct and clearly defined a branch of the law as is criminal law or corporation law, and in popular signification the term "probate law" includes all matters of which probate courts generally have jurisdiction, among which is "estates of deceased persons." An examination of this act will show that all its provisions are connected with this general sub-ject. The fact that some of them relate to matters of mere procedure, while others define and fix rights of property, is no valid objection to the law. The same objection might be urged against many acts the constitutionality of which has never been questioned. Neither is the fact important that a law contains matters that might be, and usually are, contained in separate acts, or would be more logically classified as belonging to different subjects, provided only they are germane to the general subject of the act in which they are put. The legislature is not limited to the most logical or philosophical classification. The law of wills and of title to property by descent is a part of the law relating to the estates of deceased persons, and hence is, in popular understanding, if not logically, a part of the general subject of probate law. If a party dies testate, the will has to be probated, and the estate administered, distributed, and assigned according to the provisions of the will; if he dies intestate, his estate has to be administered, distributed, and assigned according to the law of succession and inheritance. In the one case, the probate court has to determine whether the will has been executed according to law, and, if so, then construe its provisions; in the other case, it has to determine who are the distributees or heirs, according to the statute. Of course, it is the law, and not the court, which determines in the one case what shall constitute a valid will, and in the other who shall be the heirs or distributees of an intestate; but this has no bearing upon the question under consideration. This is equally true in any case, for a court does not make, but merely administers, the law, and is bound to follow the law, even in matters of mere procedure.

We have not overlooked the suggestion (the most forcible one made

by respondent) that the law casts the descent, and determines in whom the title to property left by an intestate shall vest, and that this title may be asserted by the heir in courts other than probate, and wholly independent of any action of or administration in the latter. But it is nevertheless true that the law which declares who shall be the heirs of an intestate is a part of the law relating to the estates of deceased persons, and that usually administration proceedings are had, and the estate distributed or assigned, by decree of the probate court, and that this is in fact necessary in order to complete the chain of title of record. Hence, in popular understanding, at least, the law of descents is connected with and related to the general subject of probate law. It is certainly not so distinct or discordant a matter as to justify a court in holding the act unconstitutional, as embracing two subjects; and, looking at the matter from a practical stand-point, it seems to us that such legislation is not within the mischiefs intended to be remedied.

The classification of the law of wills and of title by descent, in an act dealing with probate matters and probate law, is not unusual. These matters have been treated of under such titles as "Decedents," (Nebraska,) "Probate Practice Act," (Montana,) "Courts of Probate and Their Jurisdiction," (Connecticut.) These are not cited as authorities as to what might be constitutionally embraced in one act in this state, for in some instances they had no such constitutional provisions as the one now being considered, and in other cases, perhaps, general revisions of the statutes were excepted from its operation. But they are cited to show that such a classification is not arbitrary or incongruous, but that in the understanding of legislatures, and even of lawyers engaged in revising the statutes, such matters as the law of wills and of title by descent have frequently been considered as having such connection with and relationship to probate law as to justify their being treated of under that general head or title. If there is any fair reason for such a classification, it is enough to sustain the law; for, when the matter is so closely connected with the subject of the act as to create a reasonable doubt as to whether or not it is included within one general subject, a court will not hold the act invalid. To use the language of the supreme court of the

United States in the case of *Montclair* v. *Ramsdell*, 107 U. S. 147, (2 Sup. Ct. Rep. 391,) in which a similar question was involved, "the objection should be grave, and. the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment on the sole ground that it embraced more than one subject, or, if but one subject, that it was not sufficiently expressed by the title."

Order reversed.

NOTE. A motion for a reargument of this case was denied January 11, 1892.