**METROPOLITAN SPORTS FACILITIES COMMISSION, Lower Court Petitioner (C1–91–634), Relator (C9–91–655),**

and

**Minnesota Twins, Inc., Relator (C1–91–634), Lower Court Petitioner (C9–91–655),**

and

**Minnesota Attorney General, intervenor, Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

**Nos. C1–91–634, C9–91–655.**

Supreme Court of Minnesota.

Dec. 20, 1991.

Corey J. Ayling, Kathleen M. Lamb, McGrann, Shea, Franzen, Carnival,

Straughn & Lamb, Chtd., Minneapolis, for Metro. Sports Facilities Com'n.

John W. Windhorst, Jr., William R. Goetz, Dorsey & Whitney, Minneapolis, for Minnesota Twins, Inc.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for Atty. Gen.

Michael O. Freeman, Hennepin County Atty., Mark Kapter Maher, Asst. County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

A 1985 amendment to Minn.Stat. § 473.-556, subd. 4 (1990) provides:

> [R]eal or personal property leased by the [Metropolitan Sports ˏFacilities] commission to another person for uses related to the purposes of sections 473.551 to 473.-595, including the operation of the metropolitan sports area, * * * shall be exempt from taxation * * *.

Certain space in the Hubert H. Humphrey Metrodome has been leased by the Commission for "exclusive year-around use" to the Minnesota Twins, Inc., and the Minnesota Vikings Football Club, Inc. It is conceded the above statute exempts the leased property from taxation. Respondent Hennepin County contends, however, that the statute is a denial of equal protection and thus unconstitutional. The Tax Court agreed with the County. We disagree and reverse.

The Commission was authorized to build and operate the Metrodome under legislation enacted in 1977. *See* 1977 Minn.Laws ch. 89, codified at Minn.Stat. §§ 473.551–.595 (1990). As a precondition to the issuance of bonds and commencement of stadium construction, the Commission was required to execute use agreements with major league professional baseball and football teams. Minn.Stat. § 473.581, subd. 3(a).

In 1979 the Commission entered into use agreements with the Vikings and the Twins. The two ball clubs agreed to use the stadium for their games and to pay rental fees based primarily on a percentage of the team's ticket receipts from each home game. The use agreement with the Twins gave the baseball club exclusive year-around use of space for locker rooms, ticket sales offices, administrative offices, and kitchen-dining areas. The Vikings under their lease got exclusive use of kitchen and storage space, a stadium lounge, and locker rooms. Later in 1979 a separate agreement gave the Vikings the right to develop and operate year-around private spectator boxes in exchange for payment to the Commission of an annual rental fee. The Commission retains ownership of the property.

The use agreements said nothing about real estate taxes, as the parties apparently assumed the property would be tax-exempt. No property taxes had been assessed against similar space leased to the same two sports clubs in the old Metropolitan Stadium in Bloomington, and section 473.-556, subd. 4, as it read in 1979, seemed to exempt the leased property from taxation.[1] Hennepin County, however, put the leased Metrodome property on the tax rolls and, in 1986, the Tax Court, construing the statute as it read in 1979, held that the leased property was subject to taxation. That decision was not appealed.

While the dispute over the 1983 taxes payable in 1984 was pending in the Tax Court, the legislature in 1985 amended the statute specifically to exempt the property leased under the exclusive year-around use agreements. The case now before us involves the 1985 amendment and is based on petitions filed in 1987 and 1988 with respect

---

1. Minn.Stat. § 473.556, subd. 4 (1979) read in pertinent part: "Any real or personal property * * * leased * * * by the commission for any of the purposes of sections 473.551 to 473.595 is declared to be * * * leased * * * for public, governmental, and municipal purposes, and shall be exempt from taxation * * *."

The 1985 amendment added the language quoted at the beginning of this opinion. This language clarified the intent that all Metrodome space be exempt from real estate taxation.

to the 1986 and 1987 assessments. The petitions were filed by the Twins and the Commission.[2] As mentioned, the Tax Court ruled the 1985 statutory amendment unconstitutional, and petitioners now are before us on writs of certiorari.[3]

This appeal presents two issues: (1) Does the 1985 amendment violate the equal protection guarantees of the state and federal constitutions? and (2) Does the statutory amendment violate the single subject clause of the state constitution?

Under the uniformity clause of our state constitution, art. 10, § 1, which requires taxes to be uniform upon the same class of subjects, we apply the three-factor rational basis test of *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979):

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*See also Guilliams v. Commissioner of Revenue,* 299 N.W.2d 138, 142 (Minn.1980).

■ Because taxation policy is peculiarly a legislative function, involving political give-and-take and an awareness of local conditions, the courts are very deferential in their review of tax legislation. *See, e.g., Rio Vista Non–Profit Housing v. Ramsey County,* 335 N.W.2d 242, 245 (Minn.1983),

*appeal dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984); *Guilliams,* 299 N.W.2d at 142–43.

■ The Tax Court concluded that the 1985 exemption statute lacked a legitimate legislative purpose. The court agreed with Hennepin County's contention that allowing the Twins and Vikings tax-free use of the Metrodome space benefitted only the Twins and the Vikings at the expense of Hennepin County's property taxpayers, who derived no corresponding benefit.

We disagree. Previously, in *Lifteau v. Metropolitan Sports Facilities Comm'n,* 270 N.W.2d 749, 753–54 (Minn.1978), we found that the 1977 act creating the Commission served a public purpose and thus public monies could be used to finance the new stadium. In finding a public purpose, we took judicial notice of the important role played by professional sports in the social and recreational life of the community. *Id.* at 754. Decisions on how to finance the stadium, we said, were "economic and political decisions to be made by legislative bodies, not the courts," and we rejected the challenger's argument that the law was invalid because it indirectly benefitted some private individuals or corporations. *Id.* at 755.

In this case, the pertinent question is whether, under our rational basis test, it is a legitimate legislative purpose to exempt from taxation space within a public purpose stadium which is leased to private parties.[4] We believe the agreements to provide tax-exempt exclusive use space do meet a legitimate purpose. These agreements are an integral part of the rather intricate financial arrangements needed to put the stadium to its intended and realized public pur-

---

2. The Commission appears as petitioner instead of the Vikings because, in April 1984, to settle their tax dispute, the Commission and the Vikings agreed that the Commission would pay any property taxes assessed against the Vikings' exclusive, year-around space in the Metrodome, up to $200,000 a year.

    The Twins were assessed taxes of $37,702.74 for 1986 and $38,536.12 for 1987. The Vikings were assessed $207,541.86 for 1986 and $216,-281.36 for 1987.

3. In *Metropolitan Sports Facilities Comm'n v. County of Hennepin,* 451 N.W.2d 319, 320 (Minn.1990), we held, over the objections of the Commission and the Twins, that Hennepin County had standing to challenge the constitutionality of the 1985 statutory amendment.

4. We find it appropriate to apply the factors of the *Miller Brewing* test in reverse order, as we did in *Guilliams,* 299 N.W.2d at 142. Thus, the threshold inquiry is whether the statute's purpose is legitimate.

pose, namely, to display professional baseball and football.[5] The exclusive use provisions serve as an incentive for the ball clubs to enter into the long-term use agreements which are central to the Commission's financial stability. When the 1985 amendment was under consideration, the legislature was aware of the Commission's agreement to pay any real estate taxes (up to $200,000 per year) that might be assessed against the Vikings' space (*see* footnote 2, *supra*); significantly, the legislative history indicates that the legislature passed the 1985 amendment with the understanding it was for the Commission's benefit. *See, e.g.,* Hearings before the Senate Tax Committee, April 10, 1985.

It is worth noting, too, that the Commission negotiated its use agreements with the Twins and Vikings under the assumption that leasing some of the Metrodome property would not render the leased property taxable; the legislature could have exempted the leased property reasonably believing that the Commission's assumption was justified, and that not to honor that assumption would lead to litigation. Indeed, the tax matter did lead to a dispute between the contracting parties. *See* footnote 2, *supra*.

█ In today's world, for better or worse, professional sports are not so much a leisurely diversion, but an industry. This court has recognized that assisting in-state industry by providing special tax benefits is a legitimate legislative purpose. *Miller Brewing*, 284 N.W.2d at 357 (upholding credit against excise tax for in-state brewers). Admittedly the 1985 amendment decreases property tax revenues for Hennepin County, but under the rational basis

test this decrease must be balanced against the many other economic factors involved. The Commission was confronted with a substantial public project requiring complex financing arrangements and the cooperation and participation of private parties. Hennepin County raises legitimate concerns about the use of tax exemptions and suggests alternative solutions not involving a tax exemption; but where, as here, a rational basis has been established, the legislature is not required to use the least burdensome means to solve an economic problem. *Erie Mining Co. v. Commissioner of Revenue*, 343 N.W.2d 261, 268 (Minn.1984).

The next inquiry in our rational basis test after establishing a legitimate purpose is whether the statute's classification is "genuine or relevant" to the purpose. The 1985 amendment creates two classifications: first, it distinguishes between the Commission and other public bodies that lease their property to private parties; second, it distinguishes between the Commission's lessees (the Twins and the Vikings) and other private parties that lease publicly-owned property.

We think these classifications are genuinely related to the legitimate purposes behind the tax exemption. The Commission is a special public corporation formed to develop and operate a unique public enterprise. The very nature of the enterprise requires a classification composed of two private parties, a professional baseball club and a professional football club. The tax exemption resulting from these classifications is only one part of the overall financing plan but it is not a trivial part. The legislature reasonably could have believed that the exemption would contribute to en-

---

5. The long-term use agreements entered into by the ball clubs and the Commission are for 30 years and contain complex financial provisions, reflecting a balancing of gains and liabilities to each party. A major term of each agreement is that the team pay a percentage of its home game ticket receipts to the Commission. In addition, there are many other financial arrangements. For example, the Commission has the right to operate concessions; in exchange, the Commission pays the teams a percentage of the concession receipts. The use agreements also allocate responsibility for costs of utilities, field prepara-

tion and maintenance, general stadium maintenance, stadium personnel, and insurance.

The Vikings paid the cost of constructing the private spectator boxes. In exchange for the Vikings' exclusive right to income from leasing the private boxes, the Vikings pay the Commission annual rental fees of $440,000 for the first five years, $700,000 for the second five years, $1,000,000 for the third five years, and $1,300,-000 thereafter. The Commission receives 30 percent of the gross receipts of box concessions. Three of the private boxes are for the Commission's exclusive use.

suring that the stadium would continue to be used for its intended public purpose.

The final inquiry of our rational basis test is whether the statutory classification is based on genuine and substantial distinctions. The tax court was concerned by the fact that similar property located at any other stadium or sports facility in the state is taxable. Although this concern has some validity, we conclude that the unique nature of the Commission (particularly its public financing structure) sufficiently distinguishes the Commission and its tenants from other stadium operators and sports clubs.

To sum up, we find no equal protection violation under either the state or, for that matter, the federal constitution. *See Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983).

■ Hennepin County argues that the classifications are invalid because they single out the Commission, the Twins, and the Vikings for special tax benefits. The fewer there are in a class, the more closely this court will scrutinize the classification. *Visina v. Freeman*, 252 Minn. 177, 197, 89 N.W.2d 635, 651 (1958); *Loew v. Hagerle Bros.*, 226 Minn. 485, 489, 33 N.W.2d 598, 602 (1948). A classification that includes only a few members does not, however, necessarily render a statute invalid. In *Visina*, for example, we held legislation for port facilities in Duluth did not violate the equal protection clause, even though Duluth was the only port that fell within the scope of the legislation. *See also Carmichael v. Southern Coal Co.*, 301 U.S. 495, 510–11, 57 S.Ct. 868, 872–73, 81 L.Ed. 1245 (1937). In this case, we have a public project of relatively broad public interest where the use of the facility is inherently and functionally limited to two major occupants; under these circumstances we conclude the narrowness of the class membership does not invalidate the exemption.

■ We hold, therefore, that the 1985 amendment does not violate the equal protection and uniformity requirements of the state and federal constitutions. We also find that the statute does not violate the single subject clause of the state constitu-

tion. ("[N]o law shall embrace more than one subject, which shall be expressed in its title." Art. 4, § 17.) The single subject clause is intended to prevent "fraudulent insertion" of matters wholly unrelated to the bill's primary subject, not to prevent comprehensive legislation. *Wass v. Anderson*, 312 Minn. 394, 398, 252 N.W.2d 131, 135–36 (1977). What is required is that all matters in the bill be "germane" to one general subject. *Blanch v. Suburban Hennepin Regional Park Dist.*, 449 N.W.2d 150, 154–55 (Minn.1989).

The 1985 amendment was part of an omnibus fiscal bill of 21 articles, Chapter 14 of 1985 Minn.Laws First Spec.Sess. The Metrodome exemption was in the 20th article, entitled "miscellaneous." The title of Chapter 14 makes it clear, however, that the bill concerns taxation, so the inclusion of a property tax exemption provision would be germane and not unexpected. Finally, while Chapter 14 might have been drafted with more careful attention to the single subject requirement, we note that Chapter 14 was enacted prior to this court's recent warnings about the constitutional vulnerability of "garbage bills." *See Blanch v. Suburban Park Dist., supra; State ex rel. Mattson v. Kiedrowski*, 391 N.W.2d 777, 784 (Minn.1986) (Yetka, J., concurring). We conclude the legislation here is not invalid under the single subject clause.

Reversed.