ASSOCIATED BUILDERS AND
CONTRACTORS, et al.,
Respondents,

v.

The Honorable Arne H. CARLSON, et al.,
Appellants (C8–98–1383), Defendants
(C1–98–1385, C4–98–1428),

Granite City Electric, Inc., Appellant
(C1–98–1385), Intervenor (C4–98–
1428),

Minnesota Mechanical Contractors
Association, et al., intervenors,
Appellants (C1–98–1385),

International Brotherhood of Electrical
Workers, Local 292, intervenor,
Appellant (C4–98–1428).

Nos. C8–98–1383, C1–98–1385, C4–98–1428.

Court of Appeals of Minnesota.

Feb. 2, 1999.

Review Granted April 20, 1999.

Douglas P. Seaton, Robin N. Kelleher, Burk, Seaton & Castle P.A., Edina, MN (for respondents)

Michael A. Hatch, Attorney General, Kenneth E. Raschke, Jr., Assistant Attorney

General, St. Paul, MN (for appellants Carlson, et al.)

Marshall H. Tanick, Teresa J. Ayling, Mansfield & Tanick, P.A., Minneapolis, MN (for appellants Minnesota Mechanical Contractors)

Lee Lastovich, Paul J. Zech, Felhaber, Larson, Fenlon & Vogt, Minneapolis, MN (for appellant Granite City Electric)

Richard A. Miller, Brendan D. Cummins, Miller O'Brien, Bloom, Minneapolis, MN (for appellant IBEW)

Vincent J. Fahnlander, Moss & Barnett, P.A., Minneapolis, MN (for amicus Employers' Association)

David D. Hammargren, Hammargren & Meyer, P.A., Edina, MN (for amicus Minnesota State Senators)

Joseph E. Flynn, Knutson, Flynn, Deans & Olsen, P.A., St. Paul, MN (for amicus Minnesota School Boards Association)

Considered and decided by AMUNDSON, Presiding Judge, KLAPHAKE, Judge, and MULALLY, Judge.*

## O P I N I O N

KLAPHAKE, Judge

Respondents Associated Builders and Contractors (ABC), Independent School District No. 882 (ISD 882), and Wright Electric, Inc., an electrical contractor who submitted the low bid for ISD 882's new high school project (Wright Electric), brought this declaratory judgment action against appellants, the governor of Minnesota and two state commissioners (state appellants).[1] Respondents sought a declaration interpreting Minn.Stat. § 121.15, subd. 1a (Supp.1997) as not requiring that their construction project follow the prevailing wage act; respondents alternatively challenged the enactment of Minn.Stat. § 121.15, subd. 1a, asserting that it was invalidly enacted because its inclusion within the 1997 omnibus tax bill violated the single

subject and title requirements of Minn. Const. art. IV, § 17.

In response to cross-motions for summary judgment, the district court determined that because the statute is ambiguous, it must be read to fulfill the legislature's intent that the prevailing wage act be applied to all educational projects costing over $100,000. The district court further determined that, in enacting the statute as part of the 1997 omnibus tax bill, the legislature violated both the single subject and title requirements of the state constitution.

These appeals followed entry of judgment. This court has accepted amici curiae briefs from three groups, who all align themselves with respondents in support of the district court's decision. We affirm the district court's determination that the statute applies the prevailing wage act to all educational construction projects over $100,000. We also affirm its determination that the single subject and title requirements of the Minnesota Constitution were violated.

## FACTS

In the fall of 1997, ISD 882 sought prevailing and non-prevailing wage bids from electricians for its new high school in Monticello. ISD 882 awarded the contract to Wright Electric, the low non-prevailing wage bidder.

Respondents thereafter brought this action challenging the applicability and constitutionality of Minn.Stat. § 121.15, subd. 1a (Supp. 1997), which provides:

**Project.** The construction, remodeling, or improvement of a building or site of an educational facility at an estimated cost exceeding $100,000 is a project under section 177.42, subdivision 2.

Section 177.42, subdivision 2, is part of the prevailing wage act and provides:

"Project" means erection, construction, remodeling, or repairing of a public building

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10

1. The district court allowed three intervenors: Granite City Electric, Inc., the low prevailing

wage bidder on ISD 882's project (Granite City), a group of three trade associations, and a labor union. These intervenors are participating in this appeal as appellants.

or other public work financed in whole or in part by state funds.

Minn.Stat. § 177.42, subd. 2 (1996).

Legislative history indicates that the amendment of section 121.15 to add subdivision 1a was proposed in direct response to *NewMech Cos. v. Independent Sch. Dist. No. 206*, 540 N.W.2d 801 (Minn.1995). In that case, the supreme court held that certain types of state aid payments to a school district to finance a construction project did not constitute state funding so as to bring the project within the purview of the prevailing wage act. The court reasoned that where these types of state aid payments are intended as property tax relief, the requirements of the prevailing wage act need not be met unless state funds are available at the time of construction to directly pay for the construction. *Id.* at 804.

During the 1997 legislative session, House File 1512, a bill to add section 121.15, subdivision 1a, was introduced in the labor-management relations committee; there was no companion bill in the Senate. The bill was described by its author as a way to circumvent the supreme court's decision in *New-Mech*. House File 1512 was referred to the tax committee, where it was incorporated into the omnibus tax bill. When the omnibus tax bill arrived on the House floor, it was touted as having achieved "both property tax relief and long-term reform * * * without raising any other taxes[.]" Article 16 of the bill, captioned "miscellaneous," included the provision at issue here; it was summarized as including "a number of miscellaneous and minor changes in tax laws." After returning from conference committee, the omnibus tax bill passed both houses, by a 127–6 vote in the House and a 66–0 vote in the Senate.

The 890–word title of the act begins "An ACT relating to the financing and operation of state and local government." 1997 Minn. Laws ch. 231. Aptly described by respondents as "a daunting piece of legislation" and by one amici as "behemoth," the act covers 185 pages in the session laws and includes 16 articles. The provision at issue here was enacted as 1997 Minn. Laws ch. 231, art. 16, § 4.

## ISSUES

I. Do respondents lack standing or legal capacity to challenge the validity of this statute?

II . Did the district court err in interpreting Minn.Stat. § 121.15, subd. 1a, as applying the prevailing wage act to this nonstate funded educational project?

III . Did the district court err in concluding that Minn.Stat. § 121.15, subd. 1a, is unconstitutional because it violates the single subject and title rule?

## ANALYSIS

### I.

The state appellants argue here, as they did before the district court, that respondents lack the requisite standing and legal capacity to maintain this action. The district court did not explicitly address this jurisdictional issue, but the issue can be raised at any time. *See Annandale Advocate v. City of Annandale*, 435 N.W.2d 24, 27 (Minn.1989).

Standing requires that a plaintiff have sufficient stake in a justiciable controversy to seek judicial relief. *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972). Economic injury "or the potential for economic injury" is sufficient to confer standing. *Byrd v. Independent Sch. Dist. No. 194*, 495 N.W.2d 226, 231 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993). Respondents have satisfied this injury-in-fact requirement: their complaint alleges that ISD 882 "stands to be harmed in an amount equaling more than $2,000,000.00 through the asserted operation of this statute" and that Wright Electric and ABC "stand to be harmed significantly * * * due to deprivation of business opportunities occasioned by reduced price competition in labor costs if so-called 'prevailing wages' are imposed on school construction projects." Similarly, an affidavit submitted by ISD 882's superintendent states that if ISD 882 "is required to accept the prevailing wage bid rather than the actual low bid of Wright Electric, the cost to ISD 882 and

to the tax payers of the District will be $92,813.00."

The state appellants further argue that the interests of Wright Electric and ABC are entirely derivative to those of ISD 882 and that ISD 882 lacks statutory authority to sue the state and its officers. However, school districts are granted specific and implied powers to manage their business and protect their interests, including the power to prosecute and defend actions "[i]n all proper cases." Minn.Stat. §§ 123.35, subd. 1; 123.40, subd. 2; 127.02 (1996). These statutes impliedly give school districts authority to challenge legislation that directly affects the interests of the school, the costs of school buildings, and the business of the district. *Id.; see also* Minn.Stat. § 555.02 (1996) (declaratory judgments act gives person whose rights or legal relations are affected by statute the right to obtain declaration of rights). Thus, we conclude that respondents have the legal capacity to bring this declaratory judgment action against the state appellants, who are charged with the authority to enforce section 121.15, subdivision 1a.

## II.

■ The district court rejected respondents' first alternative argument, which respondents have raised in a notice of review on appeal, that the plain language of section 121.15, subdivision 1a, fails to change or modify the requirement that only state financed projects are subject to the prevailing wage act. Rather, the court concluded that the statutory language is ambiguous and that the legislative history establishes that the legislature intended to bring all educational projects over $100,000 within the purview of the prevailing wage act and to avoid the holding in *NewMech.*

■ Statutory construction and interpretation are questions of law that an appellate court reviews de novo. *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993). When construing and applying statutes, a court's function is to ascertain legislative intent and give effect to that intent. *Nordling v. Ford Motor Co.,* 231 Minn. 68, 77, 42 N.W.2d 576, 582 (1950). Where a statute is open to at least two reasonable interpretations, it is ambiguous. *Northern States Power Co. v. Donovan,* 258 Minn. 125, 128, 103 N.W.2d 126, 128 (1960).

Differing interpretations of section 121.15, subdivision 1a, are possible, as illustrated by affidavits submitted by the parties from two local law school professors. One interpretation substitutes "[t]he construction, remodeling, or improvement of a building or site of an educational facility at an estimated cost exceeding $100,000" for the prevailing wage act's definition of a "project." Under this interpretation, ISD 882 is required to comply with the prevailing wage act, regardless of the source of funding for its educational construction project. Another interpretation reads section 121.15, subdivision 1a, as not eliminating or modifying the prevailing wage act's overall requirement that a "project" be "financed in whole or in part by state funds." *See* Minn.Stat. §§ 177.41, 177.42, subd. 2 (1996). Under this interpretation, ISD 882 need not comply with the prevailing wage act because its project was not financed with state funds. Because these two differing interpretations represent reasonable readings of section 121.15, subdivision 1a, we conclude that the provision is ambiguous. *See Mattson v. Flynn,* 216 Minn. 354, 357–58, 13 N.W.2d 11, 14 (1944) (fact that able lawyers, after careful study of statutory provisions, took opposite views as to its meaning, supported conclusion that language itself did not explicitly convey legislature's intention and that construction necessary).

■ Ambiguous statutes may be viewed in light of conditions and circumstances surrounding their enactment to ascertain legislative intent. *Mankato Citizens Tel. Co. v. Commissioner of Taxation,* 275 Minn. 107, 112, 145 N.W.2d 313, 317 (1966). The legislative history in this case undisputedly establishes that the legislature intended section 121.15, subdivision 1a, to apply the prevailing wage act to all educational projects costing more than $100,000, whether state funded or non-state funded. We therefore affirm the district court's rejection of respondents' alternative argument that the statute does not apply to ISD 882's construction project.

### III.

Minnesota statutes are presumed constitutional. *State v. Machholz*, 574 N.W.2d 415, 419 (Minn.1998). The party challenging the constitutionality of a statute has the burden of demonstrating its invalidity beyond a reasonable doubt. *Id.*

Minn. Const. art. IV, § 17 provides that "[n]o law shall embrace more than one subject, which shall be expressed in its title." The district court determined that section 121.15, subdivision 1a, is unconstitutional because its inclusion in the 1997 omnibus tax act violated this single subject and title requirement. We agree.

Few pieces of legislation have been declared unconstitutional under Minn. Const. art. IV, § 17. *See, e.g., State ex rel. Finnegan v. Burt*, 225 Minn. 86, 88–89, 29 N.W.2d 655, 656–57 (1947) (statute relating to discharge and demotion of employees unconstitutional because it covers "separate and distinct subject not declared or suggested" in title of act); *State v. Women's & Children's Hosp.*, 143 Minn. 137, 138–39, 173 N.W. 402, 402 (1919) (act relating to homeless children and to maternity hospitals void as containing more than one subject). Historically, courts have extended great deference to the legislature and have construed this requirement liberally.

In recent years, however, the legislature has increasingly resorted to passage of omnibus bills. Although the supreme court has continued to uphold these bills, it has repeatedly warned the legislature that the single subject and title requirements of the constitution remain viable and that future legislation violating these restrictions will be struck down. *See, e.g., State ex rel. Mattson v. Kiedrowski*, 391 N.W.2d 777, 784–85 (Minn.1986) (Yetka, J., concurring specially) (first warning to legislature that "garbage" or "Christmas tree" bills that include totally unrelated subjects will not be tolerated under Minn. Const. art. IV, § 17); *Blanch v. Suburban Hennepin Regional Park Dist.*, 449 N.W.2d 150, 155 (Minn.1989) (Yetka, J., concurring specially) ("legislature hereafter has full notice of the consequences of overstepping constitutional limitations in its drafting of omnibus bills"); *Metropolitan Sports Fa-cilities Comm'n v. County of Hennepin*, 478 N.W.2d 487, 491 (Minn.1991) (court found no constitutional violation, emphasizing that challenged provision had been enacted prior to court's "recent warnings about the constitutional vulnerability of 'garbage bills' ").

These warnings recognize, as do we, the strain placed upon the public and legislature by these burdensome, voluminous catchall bills. These warnings further recognize, as do we, a reluctance to strike down an omnibus bill and the possible chaos that may likely result from such judicial action. *See Blanch*, 449 N.W.2d at 156–57 (Popovich, J., concurring specially) (discussing resulting chaos if omnibus appropriation bill declared invalid). Nevertheless, we conclude that in this case legislative proponents of this provision have overstepped the bounds imposed by the constitution.

*Single Subject*

The purpose of the single subject restriction has been stated as:

> To secure to every distinct measure of legislation a separate consideration and decision, dependent solely upon its individual merits, by prohibiting the fraudulent insertion therein of matters wholly foreign, and in no way related to or connected with the subject.

*State v. Cassidy*, 22 Minn. 312, 322 (1875). Stated another way by Justice William Mitchell, the purpose is

> to prevent what is called "log rolling legislation" or "omnibus bills" by which a number of different and disconnected subjects are united in one bill, and then carried through by a combination of interests.

*Johnson v. Harrison*, 47 Minn. 575, 577, 50 N.W. 923, 924 (1891). A variation of the "log rolling" objection has been described as preventing

> "riders" from being attached to bills that are popular and so certain of adoption that the rider will secure adoption not on its own merits, but on the merits of the measure to which it is attached.

Millard Ruud, "*No Law Shall Embrace More than One Subject*," 42 Minn. L.Rev. 389, 391 (1958) (footnote omitted). What is objection-

able is the insertion of matter wholly unrelated to the bill's primary subject, not the drafting of comprehensive legislation. *Metropolitan Sports Facilities,* 478 N.W.2d at 491. Considering these purposes, the provisions of an act must "be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject." *Johnson,* 47 Minn. at 577, 50 N.W. at 924.

The supreme court has upheld omnibus pieces of legislation even when the "common thread which runs through the various sections * * * is indeed a mere filament." *Blanch,* 449 N.W.2d at 155 ("park bill" contained in omnibus appropriations bill not invalid because germane to broad subject of appropriations for operation of state government); *see also Metropolitan Sports Facilities,* 478 N.W.2d at 491 (inclusion of property tax exemption provision germane to omnibus bill relating to taxes); *Wass v. Anderson,* 312 Minn. 394, 402, 252 N.W.2d 131, 137 (1977) (provisions incorporated into omnibus bill concerning use, financing and construction of public highway transportation system all related to transportation).

Appellants argue that the "mere filament" connecting the various sections of the 1997 omnibus tax bill, 1997 Minn. Laws ch. 231, is taxation and governmental operations. But such a broad subject virtually swallows the single subject requirement; most legislation involves some form of governmental operations. In addition, the topics of "taxation" and "governmental operations not involving taxation" may already be two divisible subjects.

A rather cursory examination of chapter 231 suggests that its broad subject is actually "tax reform and tax relief." Upon closer examination, chapter 231 appears to include a variety of disparate topics, as illustrated by a section involving regulation of cooperatives (art. 16, § 11) and an amendment to the ·Minnesota Unfair Cigarette Sales Act (art. 16, § 12). Neither of these topics meet the "mere filament" connection to tax reform and relief, taxation in general, or governmental operations. Moreover, other provisions of chapter 231 include the regulation of local government expenditure on lobbyists, desig-

nation of a hazardous waste cleanup site, and description of the continuity of utility easements after state conveyances of real estate. Finally, the provision at issue here, art. 16, § 4, which applies the prevailing wage act to all education construction projects costing over $100,000, was described on the House floor as applying even to projects involving nonpublic funding, such as voluntary contributions or fundings by a community service club; this purpose is not remotely related to tax reform and relief.

We therefore conclude that under any reasonable construction, 1997 Minn. Laws ch. 231 violates Minn. Const. art. IV, § 17, because it embraces more than one subject.

*Title*

■ The single subject and title requirements of Minn. Const. art. IV, § 17 are frequently described and discussed together. However, the requirements serve different purposes and employ slightly different analyses.

■ The purpose of the title requirement is

> To prevent surprise and fraud upon the people and the legislature by including provisions in a bill whose title gives no intimation of the nature of the proposed legislation or of the interests likely to be affected by its becoming a law[.]

*Johnson,* 47 Minn. at 577, 50 N.W. at 924. In short, the title requirement is a notice requirement.

Chapter 231 begins, "[a]n Act relating to the financing and operation of state and local government." The title goes on for a total of 890 words. Notably absent are any words such as, "labor," "school districts," "construction," "projects," or "prevailing wages." The title references Minn.Stat. § 121.15, a section assigned to the education code. However, until chapter 231 added subdivision 1a to section 121.15, that statute had no connection to the prevailing wage act. There is nothing in the title to apprise the public or the members of the legislature that the prevailing wage act would be extended to school construction projects even when state funds are not involved. The notice problem inherent in this legislation is even more acute, consider-

ing that chapter 231 originated in the House, had no companion bill in the Senate, and came to the Senate as a House-passed conference committee report on tax reform. Simply put, the title failed to give notice to the public and legislators of the prevailing wage act inclusion and, consequently, violated the title requirement of Minn. Const. IV, § 17.

*Severability*

 We are mindful of the supreme court's observation that "since it is the presence of more than one subject which renders a bill constitutionally infirm, it appears * * * unlikely that any portion of such a bill could survive." *Blanch,* 449 N.W.2d at 155; *see also id.* at 156 (Popovich, J. concurring specially) (likely possibility that entire law could fail would be greater deterrent than severing challenged provision, which might permit legislature "to take a chance"). On the other hand, we are guided by Minn.Stat. § 645.20 (1998), which states that provisions of all laws are severable, unless specifically noted or unless they are so inseparable as to be incomplete or incapable of being executed without the voided provision. We therefore sever art. 16, § 4 from chapter 231, and declare it void, without ruling on any other provision of chapter 231.[2]

We take this limited action for the following reasons: (1) art. 16, § 4 is not related to the core subject of chapter 231, to-wit tax reform and relief, and the remaining portions of chapter 231 are not dependent upon, connected to, or incomplete without the severed portion; (2) only art. 16, § 4 was challenged in this proceeding; (3) art. 16, § 4 violates the title requirements of the Minnesota Constitution, while other provisions may not; (4) because art. 16, § 4 was not part of the original bill, had no companion in the Senate, and became law only as part of the conference committee report presented to both houses in the closing hours of the 1997 legislative session, holding it alone invalid serves one of the purposes of the single subject requirement, which is to prevent riders from being attached to other legislation; and (5)

because this is the first case finding a violation of the single subject and title requirements of the Minnesota Constitution since the supreme court's recent warnings, a limited consequence directed at the offending rider is reasonable and appropriate.

## DECISION

We affirm the district court's reading of Minn.Stat. § 121.15, subd. 1a (Supp.1997) as requiring that all educational construction projects costing over $100,000 be subject to the prevailing wage act. We further affirm the district court's determination that Minn. Stat. § 121.15, subd. 1a (Supp.1997) is unconstitutional because it was enacted in violation of the single subject and title restrictions of Minn. Const. art. IV, § 17.

**Affirmed.**

re-enact in separate bills any provisions it wishes to protect from such challenges.

---

**2.** This decision ultimately may put other provisions or the entire act under a cloud. The legislature is currently in session, however, and may