**DEFENDERS OF WILDLIFE; Sierra Club, North Star Chapter; Humane Society of the United States; Friends of Animals and Their Environment; Help Our Wolves Live; Minnesota Wolf Alliance; and the Animal Protection Institute, Appellants,**

v.

**Jesse VENTURA, in his capacity as Governor of the State of Minnesota, Respondent.**

No. C3–01–329.

Court of Appeals of Minnesota.

July 31, 2001.

Review Denied Oct. 24, 2001.

Brian B. O'Neill, Richard A. Duncan, Elizabeth H. Schmiesing, Chad M. Oldfather, Faegre & Benson, L.L.P., Minneapolis, for appellants.

Mike Hatch, Attorney General, David P. Iverson, Assistant Attorney General, Joan M. Eichhorst, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, and RANDALL, Judge, and HARTEN, Judge.

## OPINION

R.A. RANDALL, Judge.

Appellants challenge the constitutionality of 2000 Minn. Laws ch. 463, arguing that it violates the single-subject requirement of Minn. Const. art. IV, § 17 and was the product of impermissible legislative logrolling. We find that chapter 463 does not violate the single-subject requirement of the constitution. Affirmed.

## FACTS

The gray wolf (timber wolf), once listed as an endangered species by the federal government, was reclassified as a "threatened" species in 1978. As the wolf population continued to increase, the federal government began a process to remove the wolf from its list of protected species. The federal government will turn wolf management over to the state of Minnesota once Minnesota has designed an acceptable wolf-management plan. While not without controversy, a wolf-management plan was

eventually enacted in 2000. The federal government has not yet formally passed on Minnesota's wolf management plan (WMP). At this time the federal government still classifies the wolf as "threatened."

The history of Minnesota's WMP is an integral part of appellants' legal argument. Appellants claim the legislative process is part of the proof that the WMP violates the "single subject" provision. In March 1999, a wolf-management plan was introduced into the Minnesota House of Representatives and assigned to its Agriculture Policy Committee, which then referred the bill to the Environment and Natural Resources Policy Committee. The house later passed a plan, which appellants characterize as "less protective" of the wolves, recommended by the latter committee. The bill then went to the Minnesota Senate where it passed through the Environment and Natural Resources Committee, Rules and Administration Committee, Agriculture and Rural Development Committee, and Crime Prevention Committee, the latter of which restored what appellants characterize as "more-protective" measures for the wolf. But the bill was amended on the senate floor to remove the "protective" measures and consequently tabled by the bill's sponsor. No stand-alone, wolf-management plan was passed.

In February 2000, a lottery bill was introduced in the house and assigned to its Environment and Natural Resources Policy Committee and in the senate by the Environment and Natural Resources Committee. It did not pass as a stand-alone bill. Meanwhile, a license bill was introduced in the house and referred to its Environment and Natural Resources Finance Committee and the Ways and Means Committee.

In March 2000, a "less-protective" wolf-management plan was introduced in the house and senate and referred to the house's Agricultural Policy Committee and the senate's Environment and Natural Resources Committee. After much activity, the senate passed a "more-protective" plan, but the house rejected it. The house, in turn, passed a "less-protective" bill. A committee was formed to reconcile the differences, but no compromise was attained and no stand-alone, wolf-management bill was passed. Around this time, an omnibus-supplemental-appropriations bill was making its way through the legislature. The senate's version contained provisions from the February 2000 lottery bill while the house's version did not.

In April 2000, the license bill was introduced in the senate after passing through the house. By special order, the senate amended the license bill to include a wolf-management plan, similar to the "less protective" one proposed by the house in earlier sessions, and lottery provisions the senate had placed in its March 2000 omnibus bill. Then, in May 2000, Governor Ventura signed 2000 Minn. Laws ch. 463, entitled:

An act relating to natural resources; requiring certain reports; modifying duties of citizen oversight committees; modifying certain license fees; providing for wolf management; modifying use of lighted fishing lures; modifying disposition of payments in lieu of sales tax for lottery tickets; appropriating money; amending Minnesota Statutes 1998, sections 3.737, subdivision 1; 97A.055, subdivisions 4 and 4a; 97A.331, by adding a subdivision; 97A.475, subdivisions 2, 3, 6, 7, 8, 11, 12, 13, and 20; 97A.485, subdivision 12; 97B.645; 97B.671, subdivision 3, and by adding a subdivision; 97C.335, as amended; and 297A.44; subdivision 1; proposing coding for new law in Minnesota Statutes, Ch. 97B.

Thereafter, appellants filed a complaint in district court challenging the constitu-

tionality of the portion of this act pertaining to wolf management in Minnesota, arguing that it violates the single-subject requirement of Minn. Const. Art. IV, § 17. Appellants claim the WMP was a product of impermissible "logrolling" and that chapter 463 embraces more than a single subject. Appellants moved for summary judgment. Respondent moved to dismiss pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. The district court considered matters outside the bare pleadings, thus converting the proceedings into cross motions for summary judgment. The district court denied appellants' motion for summary judgment and granted respondent's. This appeal followed.

## ISSUE

Does 2000 Minn. Laws ch. 463 violate the single-subject requirement of Minn. Const. Art. IV, § 17?

## ANALYSIS

What is man without the beasts?
If all the beasts were gone,
Men would die from a great loneliness of spirit,
For whatever happens to the beasts,
Soon happens to man.
All things are connected.

Maureen Greeley, *Wolf* 115 (1996) (quoting Chief Seattle).

■■■ Generally, in reviewing cases dismissed pursuant to Minn. R. Civ. P. 12.02(e), the only question before this court is whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980). But when the district court considers matters outside the pleadings, "the motion to dismiss shall be treated as one for summary judgment." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.

1993) (citing Minn. R. Civ. P. 12.02). Here, the district court considered matters outside the pleadings in making its decision and thus, the granting of the motion to dismiss shall be treated as a grant of summary judgment.

■■■ Appellants challenge the constitutionality of chapter 463 by arguing that it violates Minn. Const. Art. IV § 17, which requires that "no laws shall embrace more than one subject." "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *In re Blilie*, 494 N.W.2d 877, 881 (Minn. 1993) (citation omitted). Accordingly, this court "is not bound by the [district] court's conclusions." *Id.* (quotation omitted). Minnesota statutes are presumed constitutional and are declared unconstitutional only "with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). A necessary prerequisite for a finding of unconstitutionality is the challenging party's demonstration beyond a reasonable doubt of a violation of some provision of the Minnesota Constitution. *Id.*

### A. Single Subject

■■■ Appellants argue that 2000 Minn. Laws ch. 463 impermissibly embraces more than one subject. The purpose of the single-subject provision is to ensure that the legislature separately reviews and considers each law, thereby diminishing the possibility that matters that are *wholly unrelated* with a law's subject are not included with the primary law. *State v. Cassidy*, 22 Minn. 312, 322 (1875). Minnesota courts have traditionally construed the constitutional single-subject provision broadly to afford appropriate deference to the Minnesota legislature. "The common thread which runs through the various sec-

tions" need only be a "mere filament." *Blanch v. Suburban Hennepin Reg'l Park Dist.*, 449 N.W.2d 150, 155 (Minn.1989).

Historically, Minnesota courts have rarely invalidated laws for a violation of the single-subject requirement. Because of the requisite deference each branch of government affords the other in management of its internal affairs, there have been a limited number of challenges to legislation based on a claim of an article IV, § 17 violation. In the past few decades, the Minnesota Supreme Court has been called on to examine this issue only a handful of times. There is only one recent case, *Associated Builders and Contractors v. Ventura*, 610 N.W.2d 293, 304 (Minn. 2000), where the Minnesota Supreme Court threw out legislation based solely on the "single subject" provision. Although violations of the single-subject requirement are rarely found, the supreme court has recognized limitations on the interpretation of the single-subject provision. *Id.* at 303 (severing wage amendment provision holding that not severing "would push the mere filament to a mere figment").

The supreme court noted that recent cases prior to *Associated* took "a different approach" to analyzing challenges to statutes based on section 17. *Id.* at 301. In *State ex rel. Mattson v. Kiedrowski*, 391 N.W.2d 777, 778, 783 (Minn.1986), the bill was challenged as separation of powers and single-subject violations. The court invalidated the bill under the separation of powers doctrine and did not reach the single-subject challenge, but Justice Yetka in a concurring opinion

> warn[ed] the legislature that if it does hereafter enact legislation similar to [the challenged bill], which clearly violates Minn. Const. Art. IV, § 17, we will not hesitate to strike it down regardless of the consequences to the legislature, the public, or the courts generally.

*Id.* at 785 (Yetka, J., concurring specially). The challenged bill in *Kiedrowski*, unlike our bill at issue, included vastly dissimilar provisions ranging from "provisions relating to agricultural land, a council of Asian Pacific Minnesotans and the establishment of a recycling program." *Associated*, 610 N.W.2d at 301 (citing *Kiedrowski*, 391 N.W.2d at 784 (Yetka, J., concurring specially)). In *Blanch*, the challenged bill provision on obtaining land to develop parks in an act entitled "relating to the organization and operation of the state government" did "indeed [contain] a mere filament" and was upheld. *Associated*, 610 N.W.2d at 302 (citing *Blanch*, 449 N.W.2d at 154–55). Justice Yetka again, in *Blanch*, put the legislature on "full notice of the consequences of overstepping constitutional limitations in its drafting of omnibus bills." 499 N.W.2d at 155 (Yetka, J., concurring specially).

Next, an omnibus fiscal bill provision that exempted certain Metrodome property from taxation with a title that included the word "taxation" was upheld. *Metropolitan Sports Facilities Comm'n v. County of Hennepin*, 478 N.W.2d 487, 491 (Minn.1991). But the court in *Associated* carefully noted "while the bill could have been more consistent with the single subject requirement, it was enacted prior to the *Blanch* warning." *Associated*, 610 N.W.2d at 302 (citing *Metropolitan*, 478 N.W.2d at 490).

In *Masters v. Commissioner, Minnesota Dep't of Natural Resources*, 604 N.W.2d 134 (Minn.App.2000), the 48–page bill covered the areas of environment, natural resources, and agriculture. This court noted:

> Unlike the statute involved in *Associated Builders*, [the challenged bill] is not overbroad. The areas of environment, natural resources, and agriculture are

closely related to one another and constitute one subject.

*Id.* at 138.

In *Associated*, the cornerstone of appellants' argument today, the supreme court found that an amendment on prevailing wage law in a bill, which had remaining subjects that included taxation and government operations, was a violation of the single-subject requirement. *Associated*, 610 N.W.2d at 304. The court noted that if it were to uphold the amendment on wage law, which had no connection to the other subjects and required that the wages be paid regardless of whether the project was publicly funded or not, "would push the mere filament to a mere figment." *Id.* at 303.

In examining the facts in *Associated*, first we note that the struck-down provision of the bill in *Associated* was merely one section in a total bill spanning 247 pages. That bill included 16 articles; a variety of subjects such as property-tax reform, special taxes, income-tax refunds, waste-management taxes; and was entitled in part "[a]n act relating to the financing and operation of state and local government." *Id.* at 297 (quotation omitted). The title contained no reference to labor, wages, or any word that would suggest the presence of the challenged provision.[1]

■ In contrast, chapter 463, the natural resources bill at issue, spans less than ten pages; the title includes the phrases "natural resources" and "providing for wolf management" by name; and covers only seven topics: the submission of annual reports on revenue from monies spent and credited to the game and fish fund from game license surcharges and waterfowl, salmon, pheasant and turkey stamps; the modification of duties of the oversight committees established to review the aforementioned reports and recommend management and use of the money in the game and fish fund; the modification of certain license fees for various hunting, sporting, and fishing activities; the modification of the use of lighted fishing lures; the deposit of revenues into the game and fish fund and the natural resources fund; a one-time appropriation of money from the general fund to the commissioner of natural resources for fish and wildlife management; and the wolf management plan.

We conclude this is not the type of "garbage" bill Justice Yetka referenced in his warnings. *See Kiedrowski*, 391 N.W.2d at 785 (Yetka, J., concurring specially) (warning practice of placing wholly unrelated bills into one bill is impermissible logrolling). Chapter 463 does not contain an overly broad range of subjects *wholly unrelated* to each other. We agree with appellants' position that the supreme court in *Associated* warned against stretching the definition of "mere filament." However, we easily conclude that chapter 463 is not the bill that pushes the definition of a mere filament to a "mere figment."

## B. Impermissible Logrolling

■ Appellants argue that the addition of the wolf provision to chapter 463 was the product of impermissible logrolling. We disagree. Logrolling is defined as the "combination of different measures, dissimilar in character * * * united together * * * compelling the requisite support to secure their passage." *Cassidy*, 22 Minn. at 322. The single-subject provision requires that the legislature not fold into larger, more popular bills, *wholly unre-*

---

1. Appellants are not alleging a violation of the title requirement in chapter 463. We mention the title because it presents words and phrases suggesting the common thread among the provisions.

*lated* and potentially unpopular provisions that may not pass as a stand-alone bill. The purpose of preventing logrolling is to preclude unrelated subjects from appearing in a popular bill, not to eliminate unpopular provisions in a bill that genuinely encompasses one general subject.

*Associated,* 610 N.W.2d at 303 (emphasis added).

■■■ To support their argument, appellants detail the bill's history through the legislature and the different committees responsible for working on the wolf-management plan. Respondent argues that this court need not look at the bill's legislative history to determine germaneness. We disagree with respondent and acknowledge that legislative history may provide evidentiary support of single-subject violations. Appellants first argue that the wolf-management plan went through policy committees as a policy provision and was passed only after being put through a finance committee to support their argument that the WMP is wholly unrelated to the other provisions of chapter 463. We simply note that the fact that the bill passed through different committees, and eventually went through a finance committee rather than a policy committee before its passage is not determinative. Each branch of the legislature may name its own committees and decide what topics and what bills those committees deal with and discuss. That is their prerogative.

Appellants next argue that the wolf-management provision that was passed was given little consideration. From the record before us, we simply have to find that is not the case. Unlike *Associated,* 610 N.W.2d at 304, where the bill "had no companion bill in the senate [and] received little consideration in the house committee hearings," in the present case, there were companion bills in previous sessions detail-ing different versions of a WMP. As highlighted in appellants' own index, the WMP received considerable public and legislative attention, including, but not limited to, several major articles in daily newspapers.

■■■ Appellants argue that the wolf-management provision was the product of impermissible logrolling, meaning the provision was wholly unrelated to the other provisions of chapter 463. Appellants claim that this contentious and controversial bill went through various policy committees and could not pass as a "stand-alone" bill. They point out that it passed only when the wolf provision, similar to the one the house had passed in previous sessions, and a lottery provision that failed to pass in the senate's appropriations bill, were attached to a popular licensing bill. We understand appellants' argument, but the fact that a controversial bill could not pass as a stand-alone bill, while not irrelevant, is not conclusive proof of impermissible logrolling. If the historical nature of legislation was such that every single provision of a larger bill had to be able to pass both houses of the legislature and obtain the governor's signature on its own merits, little if any legislation would ever be signed into law. (This is not the forum to debate whether this would be a good thing or a bad thing.) For example, bonding bills, appropriations bills, spending bills, tax bills, and bills affecting policy in sensitive areas of government such as labor, education, health, and welfare often run 50, 100, 200, or more pages, containing dozens to perhaps a few hundred individual provisions, some more popular than others.

■■■ The practice of bundling controversial, volatile provisions with *germane* and less-controversial laws is not impermissible logrolling. Rather, it is the nature of the democratic process where you have major and minor political parties,

partisan politics, and an independent executive branch. The negotiations and the constant give and take are historical, purely legal, and purely permissible; there is no impermissible logrolling provided that the independent provisions in a bill ultimately signed into law are not so wholly unrelated to each other that not even a common thread can be found. *See Id.* at 303 (stating purpose of prohibiting logrolling is to "preclude *unrelated* subjects from appearing in a popular bill" (emphasis added)).

The WMP may be unpopular with certain members of the public and the legislature. However, popularity is not the test. For instance, in years of projected budget deficits because of declining monetary resources, increases in income, property, and sales taxes are and have been a part of Minnesota's past, and other states as well. Such bills, even if good public policy, do not rank high in popularity contests.

We conclude that the WMP of chapter 463 is one of seven simple provisions dealing with identifiable aspects of natural resources. Chapter 463 is less than ten pages, contrasted with the 247–page bill in *Associated,* and chapter 463 is not unclear as to the relationship between its title and its individual provisions.

This case is not about "good wolf" versus "bad wolf."

> Through the centuries, we have projected onto the wolf the qualities we most despise and fear in ourselves.

Maureen Greeley, *Wolf* 11 (1996) (quoting Barry Lopez, *Of Wolves and Men* (1979)). This is not a case where if appellants prevail, an unjustly-maligned animal will now be deemed a courageous and dignified animal. It is not the case where if respondent prevails, a courageous and dignified animal will now be stripped of its nobility. The inherent dignity of all wildlife does not depend on legal rhetoric or the arcane logic of the judiciary. The wolf is, has been, and will continue to be.

Finally, in appellate review, we do not sit as a "super-conference committee" to determine whether the bill passed was questionable legislation. We do not sit as a super-conference committee and rewrite bills or toss them aside. Appellants' argument that this is questionable legislation remains. Appellants can continue to argue that WMP will not stand federal scrutiny and thus, ultimately, Minnesota may have no wolf-management plan of its own. Appellants can continue to lobby and fight for a better bill or repeal or modification of chapter 463.

Our decision today has nothing to do with the merits of chapter 463; we speak simply to the method of its passage. Whether the WMP is good public policy does not frame our review. Rather, our review, under the four corners of Minn. Const. Art. IV, § 17, is limited to whether the Minnesota House of Representatives, the Minnesota Senate, and Governor Ventura passed and signed this bill in such a fashion that it is now the law. We conclude that they did, and it is. Appellants have not met their burden of demonstrating beyond a reasonable doubt that 2000 Minn. Laws ch. 463 violates the single-subject requirement of Minn. Const. art. IV § 17.

## DECISION

The district court properly held that chapter 463 does not violate the single-subject requirement of Minn. Const. Art. IV, § 17.

Affirmed.

HARTEN, Judge (concurring specially)
I concur in the result.