**UNITY CHURCH OF ST. PAUL,**
**et al., Respondents,**

**Adath Jeshurun Congregation,**
**et al., Respondents,**

**City of Minneapolis, Respondent,**

**People Serving People, Inc.,**
**et al., Respondents,**

v.

**STATE of Minnesota, Appellant.**

No. A04–1302.

Court of Appeals of Minnesota.

April 12, 2005.

Mike Hatch, Attorney General, Lori Swanson, Solicitor General, Thomas R. Ragatz, Ann K. Bloodhart, Assistants Attorneys General, St. Paul, MN, for appellant.

Marshall H. Tanick, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for respondents Unity Church of St. Paul, et al.

David Lillehaug, Fredrikson & Byron, P.A., Minneapolis, MN, for respondents Adath Jeshurun Congregation, et al.

Peter Ginder, Acting Deputy Minneapolis City Attorney, Burt T. Osborne, Assistant City Attorney, Minneapolis, MN, for respondent City of Minneapolis.

John B. Gordon, Elizabeth H. Schmiesing, Faegre & Benson LLP, and Joseph W. Hammell, Dorsey & Whitney LLP, and James P. McCarthy, Lindquist & Vennum PLLP, Minneapolis, MN, for respondents People Serving People, et al.

Joseph E. Olson, David M. Gross, St. Louis Park, MN, for amicus curiae Gun Owners Civil Rights Alliance.

William Z. Pentelovich, Dawn C. VanTassel, Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN and Teresa J. Nelson, American Civil Liberties Union of Minnesota, St. Paul, MN, for amicus curiae American Civil Liberties Union of Minnesota.

Considered and decided by RANDALL, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

RANDALL, Judge.

This lawsuit involves respondent religious and charitable organizations' constitutional challenge to the Minnesota Citizens' Personal Protection Act of 2003(PPA). The district court granted partial summary judgment in favor of respondents, holding that 2003 Minn. Laws. ch. 28 violated the single-subject requirement of Minn. Const. Art. IV, § 17. The district court remedied the violation by severing the PPA from the rest of chapter 28.

Appellant argues that (1) 2003 Minn. Laws ch. 28 does not violate the single-subject requirement of Minn. Const. Art. IV, § 17 and (2) the PPA does not violate the Freedom of Conscience clause of the Minnesota Constitution as applied to respondents.

We conclude the district court properly found that chapter 28 violates the single-subject requirement of the Minnesota Constitution. Then, the district court properly severed the disparate portion of the bill (the PPA) from the remainder of chapter 28. Since we affirm the district court on the single-subject issue, we decline to address appellant's Freedom of Conscience clause argument on an advisory basis.

## FACTS

The history of the PPA is an integral part of the parties' legal arguments. On January 30, 2003, Representative Lynda Boudreau introduced the PPA as H.F. 261. State of Minnesota, *Journal of the House*, Eighty–Third Session 174 (Jan. 30, 2003). H.F. 261 was titled in part, "a bill for an act relating to public safety: enacting the Minnesota Citizens' Personal Protection Act of 2003; . . . ." *Id.* The bill proposed a "must issue" system for issuing permits to carry handguns in public places, mandating statewide uniformity for handgun permitting and requiring sheriffs to grant handgun permits to anyone who meets specified criteria. H.F. 261, third engrossment. The bill also curtailed the ability of private establishments to ban firearms and proposed specific rules that private establishments must follow to ban firearms within set limits. *Id.* H.F. 261 further proposed amendments to the criminal law, creating new firearm crimes and modifying existing crimes. *Id.*

H.F. 261 passed through the House Civil Law Committee, the House Committee on

Judiciary Policy and Finance, and the House Committee on Ways and Means, with the recommendation that it pass as amended. State of Minnesota, *Journal of the House*, Eighty–Third Session 242, 350, 1240 (Feb. 13, 2003, Feb. 27, 2003, Apr. 7, 2003). On April 23, 2003, H.F. 261 was placed on the House's calendar for consideration. *Id.* at 2643.[1]

Meanwhile, S.F. 842 was introduced in the Senate on March 13, 2003 as a "bill for an act relating to natural resources." State of Minnesota, *Journal of the Senate*, Eighty–Third Session 337 (Mar. 13, 2003). S.F. 842 contained several statutory amendments relating to (1) natural resource grants; (2) gifts or grants of land to the state; (3) snowmobile registration applications; (4) snowmobile safety course reciprocity; (5) watercraft licensing; (6) game and fish fines; (7) fish house identification; (8) fish house license display; and (9) the state parks' working capital fund. After proceeding through the Senate Environment and Natural Resources Committee, S.F. 842 passed the Senate on March 24, 2003 by a vote of 65–0 and was sent to the House for consideration. State of Minnesota, *Journal of the Senate*, Eighty–Third Session 426 (Mar. 24, 2003). The House Committee on Environment and Natural Resources Finance amended S.F. 842 to (1) rescind the need for legislative approval for state park fees and (2) make adjustments to laws regulating and punishing littering within outdoor recreation systems and on highways. Hearing on S.F. 842 before the House Comm. on Env't and Natural Res. (Apr. 11, 2003).

On April 23, 2003, the same day the PPA was to be considered, S.F. 842 was brought to the House floor. State of Minnesota, *Journal of the House*, Eighty–Third Session 2644 (Apr. 23, 2003). Several representatives referred to S.F. 842 as a "DNR technical bill." House Floor Debate on S.F. No. 842 (Apr. 23, 2003) (statements of Rep. Cornish, Rep. Kelliher, Rep. Paulsen, Rep. Entenza). Representative Cornish offered an amendment to the bill, authorizing the DNR commissioner to recognize out-of-state safety courses for motorcycles, ATVs, and watercraft and adding a clause to the statutory provision requiring a firearms safety certificate to obtain a hunting license. *Id.*; State of Minnesota, *Journal of the House*, Eighty–Third Session 2644 (Apr. 23, 2003). The amendment passed.

Representative Boudreau then moved to amend S.F. 842 to include H.F. 261, the PPA, and to divide the PPA and DNR bill into 2 separate articles. House Floor Debate on S.F. No. 842 (Apr. 23, 2003). Before voting on this motion, Representative Lynn Osterman moved to amend H.F. 261 to include "Article 3," a lifetime ban on firearm possession for violent felons. State of Minnesota, *Journal of the House*, Eighty–Third Session 2660 (Apr. 23, 2003).

The House passed Osterman's amendment by a vote of 112 to 18. *Id.* at 2666. The House next passed Boudreau's amendment to S.F. 842, which now included both the PPA and the ban on firearm possession for violent felons, by a vote of 88 to 46. *Id.* at 2678. Following these amendments, the House passed S.F. 842, containing both the original DNR provisions and the new firearm legislation, by the same margin and returned the bill to the Senate on April 28, 2003. *Id.* at 2679. S.F. 842 was still titled "an act relating to natural resources." State of Minnesota, *Journal*

---

1. The identical companion bill to H.F. 261, S.F. 222, was introduced in the Senate on January 30, 2003, but was eventually withdrawn by its author from the Crime Prevention and Public Safety Committee on March 20, 2003. State of Minnesota, *Journal of the Senate*, Eighty–Third Session 137, 390 (Jan. 30, 2003, Mar. 20, 2003).

*of the Senate,* Eighty–Third Session 1389 (Apr. 28, 2003).

Once in the Senate, Senator Olson moved that the Senate concur in the House amendments and re-pass S.F. 842. *Id.* After seven hours of debate, the Senate re-passed S.F. 842 as amended by the House by a vote of 37 to 30. Senate Floor Debate on S.F. No. 842 (Apr. 28, 2003). Governor Tim Pawlenty signed S.F. 842 into law the evening of April 28, 2003. State of Minnesota, *Journal of the Senate,* Eighty–Third Session 1534 (Apr. 29, 2003). When signed into law, S.F. 842 was divided into three articles. The PPA is Article 2. Article 1 relates to natural resources, and Article 3 relates to violent felons in possession of firearms.

Soon thereafter, respondents Unity Church of St. Paul d/b/a Unity Church Unitarian and White Bear Unitarian Universalist Church filed a complaint in Ramsey County District Court challenging the constitutionality of provisions of the PPA, arguing that the act violates the Freedom of Conscience clause of the Minnesota Constitution, Minn. Const. Art. I, § 16.[2] Over the next several months, three groups of intervenors joined the lawsuit, known during the litigation as "Religious Organizations," the City of Minneapolis, and "Charitable Agencies." The intervening respondents raised additional constitutional challenges to the PPA, including the claim that the PPA violates the single-subject requirement of Minn. Const. Art. IV, § 17. The original plaintiffs then amended their complaint to conform to the Religious Organizations' complaint.

Respondents filed motions for partial summary judgment on several different grounds, some raising Freedom of Conscience clause challenges, and others making "takings" (improper use of eminent domain—no compensation) arguments. But all respondents singularly argued that 2003 Minn. Laws ch. 28 violated the single-subject requirement of Minn. Const. Art. IV, § 17.

Appellant State of Minnesota moved the district court to dismiss the action. Instead, the district court granted summary judgment in favor of respondents, concluding that "the Minnesota Citizens' Personal Protection Act 200[3], known as Senate File 842, violates Article 4, Section 17 of the Minnesota Constitution because it em-

---

**2.** Another group of religious organizations filed a declaratory judgment action in Hennepin County on May 29, 2003 challenging the constitutionality of the PPA as applied to them. On June 6, 2003, the district court issued an order granting in part the organizations' motion for a temporary injunction. The district court temporarily enjoined enforcement of the part of the act requiring the organizations to post a sign of specified size and typeface and to make an oral request to persons entering the building in order to ban firearms from the church building. The organizations appealed to this court, arguing that the district court abused its discretion by refusing to enjoin enforcement of other portions of the act prohibiting the churches from banning guns in their parking lots and from disallowing tenants to carry guns on church grounds. In an opinion filed January 13, 2004, this court concluded that appellants had standing to challenge the Personal Protection Act and remanded to the district court for additional findings on the district court's decision to deny in part the temporary injunction. *Edina Cmty. Lutheran Church v. State,* 673 N.W.2d 517, 523 (Minn.App.2004). Judge Rosenbaum, on remand, expanded the scope of the temporary injunction and stated that the Personal Protection Act infringed upon the religious organizations' free exercise of religion. *Edina Cmty. Lutheran Church v. State,* No. MC 03–008185, 2004 WL 632766, at * 3 (Minn.Dist.Ct. Mar.16, 2004). The parties understand that the temporary injunction will remain in effect pending appellate review of *Unity Church v. State. See The Minnesota Conference United Church of Christ, Email Newsletter,* Update on Conceal and Carry by David Lillehaug, http://endeo.com/mnucchf/nletters.php?sc=EEML & aid=216 (last updated August 27, 2004).

braces more than one subject." The district court severed the PPA from the rest of 2003 Minn. Laws ch. 28, leaving the DNR-amendments bill as law.

The district court did not rule on respondents' other arguments, namely whether the PPA violates the Freedom of Conscience clause of the Minnesota Constitution, and whether the PPA constitutes a property taking without compensation in violation of the state and federal constitutions. The district court "[made] comment regarding both issues to provide guidance to the Appellate Courts." This appeal followed.

## ISSUES

I. Does 2003 Minn. Laws ch. 28 violate the single-subject requirement of Minn. Const. Art. IV, § 17?

II. Does the Minnesota Citizens' Personal Protection Act of 2003 violate the Freedom of Conscience clause of Minn. Const. Art. I, § 16?

## ANALYSIS

On appeal from summary judgment, we must determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Boutin v. LaFleur,* 591 N.W.2d 711, 714 (Minn.1999). Where there are no material facts in dispute, our review is limited to determining whether the district court correctly applied the law. *Associated Builders & Contractors v. Ventura,* 610 N.W.2d 293, 298 (Minn.2000).

■■■■ The constitutionality of a statute presents such a question of law, which we review de novo. *State v. Behl,* 564 N.W.2d 560, 566 (Minn.1997). Minnesota statutes are presumed constitutional, and, therefore, this court exercises its power to declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989). A party challenging a statute carries the heavy burden of demonstrating beyond a reasonable doubt that a statute is unconstitutional. *Behl,* 564 N.W.2d at 566.

## I.

## Minnesota Constitution, Article IV, Section 17—Single–Subject Requirement

Appellant challenges the district court's determination that 2003 Minn. Laws ch. 28 violates the single-subject requirement of the Minnesota Constitution.

First, and importantly to the parties, in reviewing the district court's findings, we are not reviewing the merits of the PPA. We are simply reviewing the district court's determination that the subject matter of the various provisions contained in 2003 Minn. Laws ch. 28 was not germane to a single subject. This case does not address the merits of the PPA and constitutes no comment on the public policy underlying the act itself (other than to reiterate that the public policy of "single-subject germaneness" has been embedded in the Minnesota Constitution since passage in 1857.)

To ensure that all readers of this opinion, legal and lay persons, have a common language, we have a commentary. The PPA has been widely known, debated, and discussed, under a nickname—the "conceal and carry" bill. Somehow, the nickname "conceal and carry" got on the bill and stuck like a porcupine's quills in the nose of an overaggressive hunting dog. To set the record straight, both sides agree there is not now, nor has there ever been, any "conceal" in the laws surrounding the regulation and application for a permit to carry a handgun on one's person. "Conceal" has never been a part of the PPA. The PPA allows you, if you have the per-

mit, to carry the handgun openly or to have it beneath some article of clothing where it does not show. If you do not get the permit, it does not matter whether you wish to carry the handgun outside or inside your clothing. You cannot do it without being criminally liable. 2003 Minn. Laws ch. 28, art. 2, § 4. The *same thing is true* of the former handgun permit law, which the PPA supplanted. Under the prior law, in effect since the start of Minnesota's handgun permitting laws (1975 Minn. Laws ch. 378 § 4, codified at Minn.Stat. § 624.714 (1976)), if you had a permit to carry a handgun, it did not matter whether you displayed it openly or concealed it. If you did *not* have a permit under the prior law to carry a handgun, it would also not matter whether you displayed it openly or concealed it. You could not. Thus, a more accurate short-term handle for the PPA at issue would be the "handgun carry" bill, nothing more.

In discussing the district court's ruling, both sides agree the starting point is the constitutional provision. Article 4, section 17, requires that "[n]o law shall embrace more than one subject, which shall be expressed in its title." Minn. Const. Art. IV, § 17. We confine our analysis to the "single-subject requirement" since respondents did not claim a violation of the "title requirement" of Minn. Const. Art. IV, § 17.

 The purpose of the single-subject requirement is to prevent "log rolling legislation" or "omnibus bills" in which *dissimilar*[3] subjects are united in one bill and carried through by a combination of interests. *Associated Builders*, 610 N.W.2d at 299 (quoting *Johnson v. Harrison*, 47

Minn. 575, 577, 50 N.W. 923, 924 (1891)). In other words, this provision ensures that each piece of legislation receives separate and individual consideration on the merits by prohibiting the insertion of wholly unrelated matters. *Defenders of Wildlife v. Ventura*, 632 N.W.2d 707, 711 (Minn.App. 2001), *review denied* (Minn. Oct. 24, 2001). The single-subject provision is not intended to preclude the enactment of comprehensive legislation addressing *related* topics within a general subject area. *Metro. Sports Facilities Comm'n v. County of Hennepin*, 478 N.W.2d 487, 490 (Minn. 1991).

 While the single-subject provision is mandatory, "the single subject provision should be interpreted liberally and the restriction [will] be met if the bill [is] germane to one general subject ... 'it is to be given a liberal, and not a strict, construction.'" *Associated Builders*, 610 N.W.2d at 299 (quoting *Johnson*, 47 Minn. at 577, 50 N.W. at 924) (emphasis added); *see also Defenders of Wildlife*, 632 N.W.2d at 711. This judicial approach affords the appropriate and needed deference to the Minnesota legislature. Because of this high degree of deference given to the legislature to perform its constitutional role, there is an historical scarcity of attacks on legislation on single-subject grounds (approximately 60 in the past 148 years), and an even scarcer number of successful attacks. *See generally Associated Builders*, 610 N.W.2d at 300–02 (outlining history of constitutional attacks to legislation under the single-subject requirement). We were able to identify only five in the last 148 years. In sum, the single-subject provi-

---

**3.** Dissimilar or nongermaneness is the key word. That cannot be lost in all the smoke and mirrors that surround this debate. Legislation that someone claims is "log-rolling legislation" has always been permissible when *similar* subjects are united in one bill and the bill is passed by a combination of legislators, all of whom are united in wanting their part of the bill to go through.

sion has historically been given a liberal construction to benefit the legislature.

At the oral argument on this case, appellant referred, at times, to not wanting "liberal" or "activist" judges to overstep the will of the Minnesota legislature. Simply put, the term "liberal/activist judge" is, in reality, a "non-term." Both parties to this debate recognize the truth. What one calls "a well-reasoned conservative judicial opinion by a son or daughter of the founding fathers" means only that the judge ruled in your favor! When the judge rules against you and in favor of your opponent, on the identical facts and argument, you will now turn to the banal cliché that the judge "is too activist" for me. The term is meaningless, self-defeating, and, worse, it actually weakens appellant's position.

What appellant is arguing for is a *broad, liberal,* and *expansive* interpretation of Article IV, Section 17, which the judiciary *has* traditionally applied to the all-encompassing bills of the legislature. If the judiciary were to take a strict, narrow, conservative approach to the constitutional mandate that "no law shall embrace more than one subject, which shall be expressed in its title," virtually every appropriations bill, every omnibus bill, every technical cleanup bill, and every other type of multi-act legislation that the legislature routinely deals out, without even thinking about it, would be subject to Article IV scrutiny, and many would fail. The last thing appellant wants here is a strict, narrow, conservative approach to the meaning of some pretty plain English—*no law shall embrace more than one subject.*

Thus, we follow the traditional broad, liberal, and expansive interpretive rule set out in *Associated Builders.* The Minnesota legislature wants the judiciary to refrain from taking a strict constructionist approach to single-subject-provision jurisprudence. That has been the experience of the Minnesota judiciary.

## A. Germaneness

■ Keeping these overarching considerations in mind, a reviewing court applies a germaneness analysis to determine whether a law violates the single-subject requirement of article 4, section 17. *Associated Builders,* 610 N.W.2d at 302–03; *Blanch v. Suburban Hennepin Reg'l Park Dist.,* 449 N.W.2d 150, 154 (Minn.1989). This means that the single-subject requirement will be met as long as all matters in the bill are "germane to" one general subject, meaning that "all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of . . . one general subject." *Associated Builders,* 610 N.W.2d at 300 (quoting *Johnson,* 47 Minn. at 577, 50 N.W. at 924). The term "general subject" should be given a broad and extended meaning. *Id.* at 300–01, 50 N.W. 923.

■ To be germane to a single subject, the various sections of the bill need only be connected by a "mere filament" to one another and to the general subject.[4] *See Blanch,* 449 N.W.2d at 154–55 (holding park bill was "germane" to the broad sub-

---

**4.** Although the *Associated Builders* court impliedly adopted the "mere filament" test in its holding, the test is not without criticism. Justice Paul Anderson in a concurring and dissenting opinion in *Associated Builders* stated, "While the 'mere filament' test has served this court for many years, its interpretation has now become so deferential as to render Sec-

tion 17 ineffectual. Part I of the majority opinion correctly reflects the trend of our court's decisions on Section 17 over the past 15 years and returns our court to its proper role in interpreting this section of our constitution, namely to give each part of the constitution the plain meaning and effect of its language." 610 N.W.2d at 311.

ject of appropriations for state government operation even though the common thread running through the sections was a "mere filament"). In other words, the connection between several matters to render them germane to one subject and to each other, "can be of various kinds, as, for example, of means to ends ... or that all are designed for the same purpose, or that both are designated by the same term." *Johnson*, 47 Minn. at 578, 50 N.W. at 924. Subjects *will be* considered impermissibly duplicitous if the subjects lack any "legitimate connection with or relation to each other." *Id.* at 577, 50 N.W. at 924. In other words, provisions are not germane if they pertain to wholly unrelated matters. *State v. Cassidy*, 22 Minn. at 312, 322 (1875).

As noted, because of the liberal deference given to the legislature, Minnesota courts have rarely invalidated laws for a lack of germaneness. *Defenders of Wildlife*, 632 N.W.2d at 712. For instance, a constitutional amendment levying taxes on motor vehicle fuel and issuing bonds to finance highway construction was found germane to the subject of transportation where every matter in the chapter concerned the use, financing, and construction of a public highway transportation system and there was no evidence of fraud. *Wass v. Anderson*, 312 Minn. 394, 399–400, 252 N.W.2d 131, 135–36 (1977). A provision exempting space in the Metrodome from property taxation was held germane to the subject of taxation present in the title of a large fiscal omnibus bill. *Metro. Sports Facilities Comm'n*, 478 N.W.2d at 490. A law providing for wolf management was related to other parts of the bill including fish and wildlife management, hunting and fishing licenses, and revenue raised for the game and fish fund—all related to the general subject of natural resources. *Defenders of Wildlife*, 632 N.W.2d at 713; *see also Masters v. Comm'r, Minn. Dep't of Natural Res.*, 604 N.W.2d 134, 138 (Minn. App.2000) (holding the areas of environment, natural resources, and agriculture constitute one subject). Confirming that subjects are to be construed broadly, a law authorizing a park district to acquire land, designed to make possible the utilization of funds previously appropriated, was germane to the subject of "appropriations for the operation of state government." *Blanch*, 449 N.W.2d at 155. The common thread running through the various sections of the bill, appropriations for a wide range of state agencies, was "indeed a mere filament." *Id.; see also* 1998 Minn. Laws ch. 686, art. 1.

However, having set out the historic liberal interpretation of Article IV, Section 17, we note that the Minnesota Supreme Court recently sounded an alarm to the Minnesota legislature that the judiciary will strike down oversweeping legislation. The Minnesota Supreme Court drew the line in *Associated Builders*, holding that an amendment requiring prevailing wages in school construction and remodeling regardless of whether the project was publicly funded was not related—not even by a "mere filament"—to an omnibus tax relief and reform bill governing the financing and operation of state government. 610 N.W.2d at 303. The *Associated Builders* court expressed its frustration with "garbage"[5] or omnibus bills encompassing many unrelated subjects. *Id. Associated Builders* held that any bill containing vastly dissimilar provisions such as "provisions

---

**5.** A "garbage bill" is "legislation where, near the tail end of a session, a group of individual ideas will be combined into one bill to wrap up the legislative business to avoid acting separately on each." *State ex rel. Mattson v. Kiedrowski*, 391 N.W.2d 777, 785 (Minn.1986) (Yetka, J., concurring specially).

relating to agricultural land, a council of Asian Pacific Minnesotans and the establishment of a recycling program" must be struck down. *Id.* at 301 (citing *State ex rel. Mattson v. Kiedrowski,* 391 N.W.2d 777, 784 (Minn.1986) (Yetka, J., concurring specially)).

 In the case of the PPA, the district court found ascertaining a single subject in chapter 28 to be an impossible task. The district court explained,

> It is clear that [the Personal Protection Act], which regulates firearms, contains a totally different subject matter from the regulatory provision and from the Department of Natural Resources found in Minnesota Statute 84.01, et. al. This law is unconstitutional because it clearly violates not only the intent, but also the clear meaning of Article 4, Section 17 of the Minnesota Constitution.

As the district court noted, article 2 of chapter 28, the PPA, plainly relates to handgun permitting, regulating who may obtain a permit and how those permits must be issued. Other portions of article 2 create new firearm crimes, modify existing crimes, and recognize the right of law-abiding citizens to self-protection through the lawful use of self-defense. The PPA also sets limits on the ability of private establishments to ban guns from their premises. Chapter 28, article 3, enacts a permanent ban on firearm possession for violent felons. Articles 2 and 3, taken together, are germane to one general subject—namely handgun permitting and firearm regulation. On the other hand, the provisions in article 1 of chapter 28 do not relate to handgun permitting and firearm regulation. Article 1 contains an array of

"boilerplate"[6] DNR-related amendments addressing (1) legislative approval of state park fees; (2) the commissioner's authority to enter into grant agreements; (3) the commissioner's authority to accepts gifts on behalf of the state; (4) snowmobile registration; (5) interstate reciprocity agreements for off-highway motorcycle, ATV, and watercraft safety courses; (6) littering on a highway; (7) watercraft licensing applications; (8) fines for violating game and fish laws; (9) fish house identification; (10) fish house license display; (11) hunting licensing; and (12) the state parks' working capital fund. Article 1 contains varied provisions, and giving these provisions a common-sense interpretation, the DNR amendments (article 1) all relate to the single subject of "natural resources" or "the environment." *See Defenders of Wildlife,* 632 N.W.2d at 713; *Masters,* 604 N.W.2d at 138. It was apparent to the district court that the subjects "natural resources" and "the environment" were not germane to mandatory handgun permitting.

Viewing chapter 28 in its entirety, we affirm the district court's conclusion that the two disparate subjects contained within lack a legitimate connection to one another. Thus, chapter 28 fails the germaneness analysis. *See Johnson,* 47 Minn. at 577, 50 N.W. at 924. We are compelled to find that chapter 28, which contains dissimilar provisions, must be declared unconstitutional in violation of the single-subject requirement. *See Associated Builders,* 610 N.W.2d at 301 (noting that, contrary to prior deferential decisions, any bill containing vastly dissimilar provisions must be struck down).

---

**6.** The term has different meanings, but is commonly used to describe noncontroversial standard preliminary language or, in this case, noncontroversial various amendments that would be too time consuming to put in separate bills. The proof of this is seen in the senate vote of 65 to 0 on the original contents of article 1. When the Minnesota senate votes 65 to 0 on a bill, it can quietly be said that the bill is not controversial.

The legislative history of S.F. 842 sheds light on the discrepancy between article 1 (the DNR technical amendment bill) and articles 2 and 3 (handgun permitting and firearm regulation) and supports the district court's conclusion that chapter 28 lacks one cohesive, single subject. *See Defenders of Wildlife*, 632 N.W.2d at 714 (acknowledging that legislative history may provide evidentiary support of single-subject violations). Article 1—the original S.F. 842—was titled in part, "an act relating to natural resources" and was known to legislators as "a DNR technical bill." Only when the House amended S.F. 842 to include the PPA and provisions restricting a felon's ability to possess firearms, did the bill expand to encompass topics well outside of "natural resources" and "the environment," namely, handgun permitting

But, appellant contends that because the PPA, in terms of size and exposure, is distinguishable from the provision at issue in *Associated Builders*—the recent case in which the supreme court found a violation of the single-subject requirement—chapter 28 should be upheld. Appellant further notes that the PPA, unlike the offending provision in *Associated Builders*, is not a tiny section of an immense omnibus bill that passed through the legislature unnoticed. Appellant contends out that the PPA, as amended to S.F. 842, received extensive legislative attention in both the House and the Senate.

Appellant is correct that the House engaged in extensive debate before passing S.F. 842. The Senate discussed the act for over seven hours before re-passing the bill. That is all true, but the legislative exposure disparity between the PPA and the provision at issue in *Associated Builders* is a distinction without a difference. Yes, the Minnesota Supreme Court has expressed frustration with "midnight-passed garbage" or omnibus bills because these types of bills often run afoul of the single-subject requirement. But that cannot mean that bills that receive more legislative attention and more column inches in the newspaper will never violate the single-subject requirement. The proper inquiry on a constitutional challenge under Minn. Const., art. IV, § 17 is whether the law is germane to a single subject, not whether a bill was hotly debated or whether it passed through legislative committees unnoticed.

### B. Logrolling and other Practical Considerations

Appellant also gives considerable weight in its brief to its claim that there was no impermissible logrolling in the passage of S.F. 842. Appellant argues that the mischief the single-subject requirement is intended to address is not present. Appellant urges this court to consider this and related "practical considerations," to conclude that 2003 Minn. Laws ch. 28 does not violate the single-subject requirement. We are not persuaded.

The *Associated Builders* court addressed appellant's precise argument and determined that the contention was misdirected. 610 N.W.2d at 303 (addressing whether the absence of impermissible logrolling preserved the law from constitutional attack). *Associated Builders* clarified that "[t]he purpose of preventing logrolling is to preclude *unrelated* subjects from appearing in a popular bill, *not to eliminate unpopular provisions in a bill that genuinely encompasses one general subject.*" *Id.* (emphasis added). In other words, the evil in bundling disparate provisions in one law is not in putting unpopular *germane* provisions with popular *germane* provisions. The evil in bundling disparate provisions in one law is in putting popular and unpopular ger-

mane provisions with *nongermane* provisions.

What the Minnesota Constitution requires is germaneness. It does not require the absence of legislative maneuvering to enact unpopular, but germane, bills. In fact, the legislature has a long tradition of such permissible maneuvering since statehood. It is essential, to get any bills passed in a state that has disparate concerns in different regions of the state, and disparate concerns even within one region, that popular and less popular bills (germane) get lumped together to attract the needed votes. The judiciary understands and appreciates that.

Appellant also makes much of the extensive media attention shed on the PPA, citing *Defenders of Wildlife,* 632 N.W.2d at 714, and *Lifteau v. Metro. Sports Facilities Comm'n,* 270 N.W.2d 749, 753 (Minn. 1978), for the proposition that a provision in a bill that receives a large amount of media attention does not offend the purpose behind the single-subject requirement. We note the *Defenders* court only said the wolf management plan received considerable public and legislative attention to rebut the argument that the provision was given little consideration. 632 N.W.2d at 714. *Defenders* did not hold that media attention was *determinative* in considering whether the single-subject restriction was violated. *Id.* The wolf management plan was held to be constitutional, not because it received public attention, but because it was germane to "natural resources"—the law's general subject.[7]

After closely examining the record, we hold the district court properly concluded that 2003 Minn. Laws ch. 28 violates the single-subject requirement of Minn. Const. Art. IV, § 17 and is unconstitutional. Our affirmance of the district court neither prejudges the merits of the PPA nor the public policy behind the debate on the merits. Our holding does not prevent the Minnesota Legislature from attempting to pass future "carry bills."

This case is about performing the judiciary's constitutional role of upholding the Minnesota Constitution and giving effect to each of its provisions. To date, the 148 years of Minnesota's statehood have produced approximately five successful attacks on legislation under the single-subject requirement of the Minnesota Constitution. If the legislature deems it an impediment that perhaps one bill gets shot down on an average of once every 20 or 30 years, they, not the courts, hold the keys to amending the Minnesota Constitution and repealing the single-subject requirement. The Minnesota legislature originally passed Article IV, Section 17, and, to date, the legislature has not set the wheels in motion to repeal it. The legislature writes the constitutional provisions. The judiciary simply has an obligation to interpret them.

## C. Severance

█ Having affirmed the district court's conclusion that 2003 Minn. Laws ch. 28 violates the single-subject requirement, we next consider the district court's remedy. The district court severed the PPA from chapter 28, and let article 1, the DNR bill, stand. Both parties propose severing the "offending" portions of chapter 28, but disagree on which parts to sever. Appellant argues that the district court improperly severed the PPA from chapter 28 and requests that this court instead sever the DNR amendments con-

---

**7.** *Lifteau* is also distinguishable because that case addressed a potential violation of the *title* requirement of article 4, section 17, in which "public awareness" is a critical factor, unlike in the single subject analysis. 270 N.W.2d at 753.

tained in article 1, leaving articles 2 and 3 standing as the law. Respondents maintain that the district court correctly severed the PPA because it was, without dispute, the "offending amendment." We agree with respondents. Appellant does not (and cannot) disagree that the handgun carry portion of the bill, and the handgun carry portion only, is the center of this debate. Appellant does not dispute that the DNR technical amendments contained in article 1 are not offensive and are not the subject of this "single-subject" lawsuit.

In remedying constitutional deficiencies, the judiciary should be hesitant to declare more of a law unconstitutional than absolutely necessary to avoid "overstepping our judicial bounds in disregard of the constitutional principle of separation of powers." *Associated Builders,* 610 N.W.2d at 305 (citing *Koehnen v. Dufuor,* 590 N.W.2d 107, 113 (Minn.1999)). The established rule is that:

> while a part of [a] statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning.

*Id.* (quoting *Anderson v. Sullivan,* 72 Minn. 126, 133, 75 N.W. 8, 9–10 (1898)).

In the single-subject context, the supreme court has expressly advised the judiciary, if possible, to "[bring] the law into constitutional compliance by severing a provision that is not germane to the theme of the law." *Associated Builders,* 610 N.W.2d at 305. And where litigation challenges only one aspect of a law, the judiciary should sever the provision being challenged and decline to prejudge unchallenged portions of the law. *Id.* Importantly, Minnesota courts have historically severed the *challenged* section, leaving the rest of the law intact. *See, e.g., Egekvist Bakeries, Inc. v. Benson,* 186 Minn. 520, 523, 243 N.W. 853, 854 (1932); *In re Day,* 93 Minn. 178, 182, 102 N.W. 209, 211 (1904); *Winters v. City of Duluth,* 82 Minn. 127, 132–33, 84 N.W. 788, 790 (1901). The *Associated Builders* court followed this 100–year line of historical cases in deciding to sever an offending amendment while permitting the other provisions of a session law to stand. 610 N.W.2d at 304–05.

We note that the severance remedy is not without criticism. Justice Anderson in a concurring opinion in *Associated Builders* stated, "Severance of a challenged provision of a law found to be in violation of Section 17 would defeat Section 17's purpose and establish the judiciary as a 'super-legislature.'" After acknowledging that reasoned argument, it is correct to say that, under current law, it is preferable to sever the challenged "offending amendment" rather than invalidate unchallenged provisions of the law or strike down the entire session law. *Associated Builders* stands as a reminder that, when possible, the judiciary should decide in favor of "a more pragmatic result that is [still] consistent with our constitution" and avoid "the draconian outcome of holding ... that an unrelated provision in a law should bring the whole law down." *Id.* at 307.

Here, the district court took the pragmatic approach, severing the PPA from chapter 28 and leaving the DNR bill as law. We agree that the PPA is plainly the disputed amendment that was attached to the DNR technical bill to assist the PPA's passage through the Senate. The DNR technical provisions are not being litigated. It would overstep our judicial function to sever portions of article 1 for the purpose of upholding the PPA, where no party contested the constitutionality of the DNR provisions. That step by us could only be

seen as a political commentary on the merits of the handgun carry bill. That is not for us; it is for the legislature.

We note that because of the various amendments to S.F. 842, the bill, in its final form (signed by the governor's office), contained an article 2, denoting the PPA, and an article 3, with article 3 covering the firearms regulation provision as it applied to violent felons. Article 3 was not mentioned specifically by the district court in its order. Regardless, we find no dispute over the intent of the district court judge who signed the order now on appeal. The specific intent in the court's order and accompanying memorandum was to find "[t]hat the [PPA][8] known as S.F. 842, violates Article 4, Section 17 of the Minnesota Constitution," the single-subject provision.

Neither the district court's order nor its memorandum broke down the PPA into article 2, handgun permitting, and article 3, violent felons in possession. What is clear is the district court's intent to sever the PPA, having found it unconstitutional (on germaneness grounds) from the non-germane portion of the bill, meaning article 1, the DNR natural resources provisions. Although not mentioning article 3 by numerical name, we can only conclude the district court deemed article 3 part of the PPA for the purpose of its analysis. We will not assume the absurd result that the district court found article 2, the handgun carry portion, to be not germane to article 1, the DNR portion of the bill, but then went on to find article 3, the amendment to the PPA prohibiting the possession of firearms by certain felons, to be

germane to article 1, the DNR provisions. It cannot be said that article 3 is germane to article 1 after a finding that article 2 is not.

We agree with the district court's determination that severance was appropriate. *Associated Builders* recommends preserving as much of a law as possible out of deference to the Minnesota Legislature. That the district court did.

Accordingly, we affirm the district court's decision to sever the PPA (articles 2 and 3) from chapter 28 and, thus, bring 2003 Minn. Laws. ch. 28 into constitutional compliance with Minn. Const. art. IV, § 17.

## II.

### Freedom of Conscience

■ Appellant next argues that the district court's comments addressing whether the PPA violates the Freedom of Conscience clause, Art. I, § 16, of the Minnesota Constitution are unreviewable dicta. Respondents agree with appellant that the district court's comments are dicta and do not require an analysis. As such, respondents chose not to respond to appellant's position that the dicta was not a correct expression of existing law.

Both appellant and respondents agree the district court did not rule that the PPA violated the Freedom of Conscience clause. The district court explained that it merely "[made] comment regarding [the conscience clause issue] to provide guidance to the Appellate Courts." The district court opined that if it were to reach the issue, it

8. Paragraphs 1–4 of the district court's judgment dated July 13, 2004 inadvertently refer to the PPA as the "Minnesota Citizens Personal Protection Act of 2002." It is clear from the parties' arguments and other portions of the district court's order that the district court was referring to the "Minnesota Citizens Per-

sonal Protection Act of 2003." Paragraph 6 of the district court judgment inadvertently refers to the controlling constitutional provision as "Article 45, section 17." All other parts of the order and the parties' briefs agree the controlling section is Article 4, section 17—the single-subject provision.

would likely find the PPA unconstitutional on this ground also.

The district court found that, "The plaintiffs and intervening plaintiffs are unquestionably sincere in their [religious] beliefs." The district court further stated that, "There is no question that the Act infringes upon those beliefs as it relates to the use of their properties," and noted that, "The State ... has not identified a compelling interest, which necessitates the infringement upon plaintiffs' and intervening plaintiffs' sincere beliefs."

We recognize, as the district court did, that four of the respondents have raised a serious challenge to the PPA based on the Freedom of Conscience clause.[9] All four religious institutions have either explicitly banned guns from their premises on religious grounds or operate with a general understanding that weapons are banned from the premises to further principles of non-violence and peace.

Respondents argued below that the PPA infringes on their sincerely held beliefs by mandating that handgun carriers be allowed to bring a gun into the church unless the church posts conspicuous signs and verbally confronts their armed guests. *See* Minn.Stat. § 624.714, subds. 17(a), (b), (f) (Supp.2003). Respondents also challenged portions of the PPA that disallow the churches from banning firearms in their parking lots, *Id.*, subd. 17(c) (Supp. 2003), prohibiting persons who lease space from the church and their guests from carrying firearms, *Id.*, subd. 17(e) (Supp. 2003), and prohibiting employees from carrying firearms in parking areas, *Id.*, subd.

18(a)-(c) (Supp.2003). Respondents argued that these particular provisions impermissibly infringed on the free exercise of their sincerely held religious beliefs of peace and non-violence.

We agree with the district court that respondents' arguments were squarely presented at the district court level. However, because we affirm the district court on the Minn. Const. art IV, § 17 issue, we decline to discuss respondents' religious arguments on an advisory basis. *See State v. Hickman,* 666 N.W.2d 729, 733 (Minn. App.2003) (holding that a party is not entitled to appellate review of an advisory opinion of the district court). There are other courts and other days.

### DECISION

The district court properly held that 2003 Minn. Laws ch. 28 violates the single-subject requirement of the Minnesota Constitution, art. IV, § 17.

The district court properly severed the Minnesota Citizens' Personal Protection Act of 2003, chapter 28, to protect the remainder. We hold that both articles 2 and 3 of chapter 28 must be severed to bring chapter 28 into constitutional compliance.

**Affirmed.**

9. The particular respondents raising a Freedom of Conscience clause challenge are Unity Church of St. Paul, White Bear Unitarian Universalist Church, Gloria Dei Lutheran Church, and Eckankar.